UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X     Dkt. No. 08 Cr. 242 (SAS)
UNITED STATES OF AMERICA,

                                      NOTICE OF MOTION

        -v-


MIGUEL HINOJOZA-QUINONES,

                Defendant.
--------------------------------X

        PLEASE TAKE NOTICE, that upon the annexed declaration of

ROBERT J. KRAKOW, duly sworn to on the 18th day of July,

2008, the annexed declaration of MIGUEL HINOJOZA-QUINONES,

the indictment, the complaint, the annexed exhibits, the

accompanying Memorandum of Law and all other proceedings

heretofore had herein, the defendant MIGUEL HINOJOZA-

QUINONES, will move this Court before the Honorable Shira

Scheindlin in the United States District Court, Southern

District of New York, on a date to be set by the Court, for

the following relief:

    1.    Suppression of an oral statement or statements by
          defendant MIGUEL HINOJOZA-QUINONES to government
          agents on the ground of the involuntary character
          of the statement, and/or on the ground of the
          failure of the government to  properly advise Mr.
          HINOJOZA-QUINONES of his rights, pursuant to
          Miranda v. Arizona, 384 U.S. 436 (1966) or,
          alternatively, the holding of an evidentiary
          hearing to ascertain the facts and circumstances
          with respect thereto;

    2.    Suppression of physical evidence, to wit, a cell
          phone, its content, data, a bag, narcotics and
          other material, seized from MIGUEL HINOJOZA-
          QUINONES on the ground that the consent to search
          and seize this evidence violated the Fourth
          Amendment to the Constitution of the United States;

3.    Pursuant to 404(b) of the Federal Rules of Evidence, requiring the Government to give sufficiently early notice of its intention to use evidence of other crimes, wrongs, or bad acts of defendant MIGUEL HINOJOZA-QUINONES and of the general nature of any such evidence it intends to introduce at trial;

4.    Requiring the government to provide immediate Disclosure of exculpatory material and information pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and impeachment material relating to government witnesses pursuant to Giglio v. United States, 405 U.S. 150 (1972) and the Due Process Clause of the United States Constitution;;

5.    Leave to file additional motions, if necessary;

6.    For such other and further relief as to this Court may seem just and proper.

Dated: New York, New York
       July 18, 2008

                                        Respectfully submitted,

                                        ROBERT J. KRAKOW (1352)
                                        Attorney for Defendant
                                        MIGUEL HINOJOZA-QUINONES
                                        1205 Franklin Avenue,
                                        Suite 110
                                        Garden City, NY 11530
                                        (516) 354-3300

TO: (Via ECF)

     CLERK,
     United States District Court
     Southern District of New York
     500 Pearl Street
     New York, New York 10007

     United States Attorney's Office
     Southern District of New York
     1 St. Andrew's Plaza
     New York, New York 10007

     Attn.: A.U.S.A. John Cronan

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X    Dkt. No. 08 Cr. 242 (SAS)
UNITED STATES OF AMERICA,

                                    DECLARATION

        -v-


MIGUEL HINOJOZA-QUINONES,

                    Defendant.
-------------------------------X

    ROBERT J. KRAKOW, pursuant to 28 U.S.C. § 1746 hereby
affirms under penalty of perjury:

    1.    I am an attorney duly admitted to practice in the
United States District Court for the Southern District of New
York and have been assigned to represent MIGUEL HINOJOZA-
QUINONES in the above-captioned indictment

    2.    I am familiar with some of the facts and
circumstances surrounding this prosecution. With respect to
portions of this declaration that are based upon information
and belief, the sources of my information and belief are
examination of documents provided to me by the United States
Attorney's office and Mr. HINOJOZA-QUINONES's supporting
declaration that is annexed hereto as Exhibit "A".

    3.    I make this affirmation in support of Mr.
HINOJOZA-QUINONES's pre-trial motions for:

    (a)  suppression of oral statements on the grounds of
involuntariness and the government agents' failure to
properly issue Miranda warnings or alternatively, an
evidentiary hearing on the issue of the admissibility of the
oral statements;

(b) suppression of physical evidence, to wit, physical evidence, including a bag and its contents seized from the defendant or his wife, and other items, including a cell phone and any information or data contained therein and other material;

(c) early disclosure of proof of other crimes or conduct the government will seek to introduce at trial pursuant to Fed. R. Evid. 404(b);

(d) provision by the government of Brady/Giglio material to the defense;

(e) leave to file additional motions; and,

(f) such other and further relief as the Court may deem just and proper.

4.    Mr. HINOJOZA-QUINONES is charged in an indictment with one count of conspiracy to violate the narcotics laws of the United States in distributing heroin, in violation of 21 U.S.C. Sections 812. 841(a)(1) and 841(b)(1)(a). The indictment, which is part of the Court's file and docket, is respectfully incorporated by reference.

5.    Mr. HINOJOZA-QUINONES has been arraigned upon the indictment and has entered a plea of not guilty.

6.    No prior application has been made for any of the relief requested herein.

MOTION TO SUPPRESS STATEMENTS
OR FOR AN EVIDENTIARY HEARING

7.    The following allegations of fact are made entirely upon information and belief.

8.    On December 21, 2007 Mr. HINOJOZA-QUINONES was taken into custody by law enforcement agents in the Newark, New Jersey airport. He is alleged to have possessed a bag containing heroin that he was going to deliver to another person. Mr. HINOJOZA-QUINONES was accompanied by his wife at the time he was arrested.

9.    The agents accused Mr. HINOJOZA-QUINONES of engaging in criminal activity and questioned him extensively.

10.    The government has produced a report that contains statements allegedly made by Mr. HINOJOZA-QUINONES that the government will seek to introduce as evidence at trial. The report is annexed hereto as Exhibit "B".[1]

11.    During the interrogation of Mr. HINOJOZA-QUINONES the agents stated that if Mr. HINOJOZA-QUINONES did not confess to the agents and answer their questions he would face many years in prison.

12.    The agents said that if Mr. HINOJOZA-QUINONES answered the agents' questions about drug trafficking and cooperated with them Mr. HINOJOZA-QUINONES's wife would be released. On the other hand, the agents told Mr. HINOJOZA-QUINONES that if he did not answer the agents' questions his

---

[1] This document is numbered pages "28" to "33" in the government's document production referred to in the government's letter to counsel dated April 8, 2008.

wife would be sent to prison for many years. The agents made statements suggesting that great and offensive harm would come to Mr. HINOJOZA-QUINONES'S wife in prison.

13.    The agents spoke with Mr. HINOJOZA-QUINONES in English only even though Mr. HINOJOZA-QUINONES's native language is Spanish.

14.    Mr. HINOJOZA-QUINONES has a poor understanding of English, although he does speak and understand some rudimentary English.

15.    Mr. HINOJOZA-QUINONES did answer some of the agents' questions because, after having been threatened and manipulated by the agents' statements, he believed that if he refused to do so his wife would be sent to jail and harmed.

16.    Prior to questioning Mr. HINOJOZA-QUINONES the agents never advised Mr. HINOJOZA-QUINONES of his right to remain silent, his right to have the advice of a lawyer, the fact that any statements he made could be used against him in a legal proceeding or any of the other rights associated with Miranda v. Arizona, 384 U.S. 436 (1966).

17.    Among the documents produced by the government as discovery in this matter is a document captioned "Your Rights."[2] The document is alleged by the government to have been signed by Mr. HINOJOZA-QUINONES acknowledging that he was advised of his "Miranda" warnings. The form captioned

---

[2] This document is numbered "26" in the government's document production referred to in the government's letter to counsel dated April 8, 2008.

"ADVICE OF RIGHTS" and "YOUR RIGHTS" is annexed as Exhibit
"C".

18.    Another document produced by the government in
discovery was a document captioned "Consent to Search" that
refers to a search of a cell phone. It is annexed as Exhibit
"D".[3]

19.    Mr. HINOJOZA-QUINONES signed some papers given
to him after he spoke with the agents.

20.    Mr. HINOJOZA-QUINONES did not fully understand
the content of the papers or that they contained advice about
his rights and included his grant of consent to search Mr.
HINOJOZA-QUINONES or his possessions.

21.    Mr. HINOJOZA-QUINONES's statements were not made
voluntarily. The government agents were obligated under law
to provide Miranda warnings but they did not give any
warnings or information regarding Mr. Mr. HINOJOZA-QUINONES's
rights prior to the time they questioned him or obtained
statements from him.

22.    Any custodial statements made by Mr. HINOJOZA-
QUINONES were obtained in violation of his right to remain
silent, his right to counsel and other applicable rights. The
statements were taken in violation of Mr. HINOJOZA-QUINONES's
privilege against self-incrimination and his right to due
process under the Fifth Amendment to the United States
Constitution.

23.    Suppression of the statements allegedly obtained from Mr. HINOJOZA-QUINONES by law enforcement agents is respectfully requested.

24.    For the reasons set forth in the annexed memorandum, a pre-trial hearing must be held on the issues raised herein.

### MOTION TO SUPPRESS PHYSICAL EVIDENCE

25.    According to the government various items were seized from Mr. HINOJOZA-QUINONES and searched.  These include a "black 'Totto' overnight bag, a cell phone and other items. Some of these items are listed on a document produced by the government in discovery captioned "Custody Receipt For Retained or Seized Property" annexed hereto as Exhibit "E".[4]

26. Mr. HINOJOZA-QUINONES did not consent to the search or seizure of her person or any items in his possession.

27.    The search or seizure of any items alleged by the government to be possessed by Mr. HINOJOZA-QUINONES should be suppressed as the government agents had an insufficient predicate and lacked probable cause to search or seize said items.

28.    Upon information and belief, the search of Mr. HINOJOZA-QUINONES or his property, including his cell phone,

---

[3] This document is numbered "27" in the government's document production referred to in the government letter to counsel dated April 8, 2008.

was performed without a search warrant from any governmental authority.

29.    The search of Mr. HINOJOZA-QUINONES and any property in his possession was unlawful. The search was conducted without probable cause and was an unreasonable intrusion conducted without a search warrant without justification under the circumstances that existed.

30. Mr. HINOJOZA-QUINONES seeks to suppress any evidence seized as a result of the unlawful search.

31. Leave is requested to supplement this motion if new facts are obtained in the course of these proceedings.

MOTION FOR EARLY NOTICE BY THE<br>
GOVERNMENT OF FED. R. EVID. 404(b)<br>
EVIDENCE OF OTHER CRIMES, WRONGS OR BAD ACTS

32.    Mr. HINOJOZA-QUINONES respectfully moves this Court to direct the government to provide him with notice of its intention to use evidence of "other crimes wrongs or acts" of the defendants, as that phrase is used in Rule 404(b), Fed. R. Evid., and of the nature of any such evidence it intends to introduce at trial.

33.    To date, the government has not identified any such evidence or their intention to introduce such evidence at the trial of this matter. It is often the case, however, that the facts underlying such evidence are complex, requiring substantial trial preparation by the defendant.

34.    There is no reason in this case why the government

---

[4] This document is numbered "34" in the government's document production referred to in the government's letter to counsel

cannot provide disclosure of 404(b) evidence well in advance
of trial. To do otherwise would exhibit gamesmanship that
would unfairly prejudice the defendant's ability to prepare a
defense and to properly litigate a motion *in limine*.

35.   Accordingly, it is respectfully requested that the
Court direct disclosure of the existence and substance of any
404(b) evidence immediately or, in the alternative, not later
than six weeks prior to trial.

PROVISION OF BRADY/GIGLIO MATERIAL

36.    It is respectfully requested that the government
be directed to provide to the defense any and all material
that falls within the purview of Brady v. Maryland, 373 U.S.
83 (1963) and Giglio v. United States, 405 U.S. 150 (1974).

37.    The government's case will undoubtedly include
the testimony of alleged co-conspirators, whose credibility
is called into doubt by, inter alia, the crimes in which
he/she has participated to date.  Material and information
reflecting such crimes, and other Brady/Giglio material, must
be provided without regard to whether it exists in written
form.  Furthermore, any statements of a co-conspirator whom
the Government does not intend to call as a witness that does
not mention Mr. HINOJOZA-QUINONES should also be provided as
Brady material, as such a statement would have some tendency
to show that he was not a member of the conspiracy.  Mr.
HINOJOZA-QUINONES makes the foregoing specific requests

dated April 8, 2008.

8

without limitation and with the understanding that a general request for Brady/Giglio material is also advanced.

LEAVE TO MAKE FURTHER MOTIONS

38.  The defense has endeavored to include in this motion all forms of pre-trial relief that may properly be requested at this time, based on the information known to the defendant.  Should this case assume a different posture at a later date due, for example, to the availability or unavailability of evidence, the Court is respectfully requested to grant leave to the defendant to make such further motions as it may deem appropriate at a future date.

WHEREFORE, MIGUEL HINOJOZA-QUINONES respectfully requests that Orders issue granting to the defendant the relief sought in the instant motion, together with such other and further relief as this Court may deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. 28 U.S.C. §1746. Executed July 18, 2008.

_____
ROBERT J. KRAKOW

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X    Dkt. No. 08 Cr. 242 (SAS)
UNITED STATES OF AMERICA,

                                    DECLARATION

        -v-


MIGUEL HINOJOZA-QUINONES,

                    Defendant.
-------------------------------X

    MIGUEL HINOJOZA-QUINONES, pursuant to 28 U.S.C. § 1746

hereby affirms under penalty of perjury:

    1.    I am the defendant in the captioned indictment that

charges me with committing serious crimes. I am represented by

Robert J. Krakow on whom I rely to make all legal arguments on

my behalf. This declaration is respectfully submitted in

support of a motion to suppress statements allegedly made by

me to law enforcement authorities. It is also offered in

support of my motion to suppress physical evidence.

    2. My lawyer drafted this declaration after I told him

about my case and answered his questions. It contains

information I have provided to my lawyer but it does not

contain all of the information or details that I have given

to him about this case. This declaration has been

translated into Spanish for me by an English/Spanish

interpreter.

Defendant Exhibit "A" Dkt. 08 CR 242 (SAS) p. 01

3. I was arrested on December 21, 2007 by government agents at the Newark Liberty International Airport. My wife, Monica Gubis, was arrested at the same time.

4. Shortly after my arrest, government agents questioned me. The agents spoke to me in English only even though my primary language is Spanish and I poorly understand and speak English. I did not understand a great deal of what the agents said to me.

5.    I did understand that the agents threatened that if I did not answer their questions they would make sure that my wife went to jail. On the other hand, I understood also from what the agents told me that if I cooperated by answering their questions they would release my wife.

6. The agents also told me that if my wife were sent to jail she would likely be harmed — they said, "you know what happens to women in jail" or words I understood to have that meaning.

7.    The agents told me that if I did not answer their questions I would face a sentence of 15 years to life in jail.

8.    After being threatened and manipulated in this fashion I began to answer the agents' questions. I did so because I believed that if I refused to answer the questions my wife would be sent to jail and harmed.

**Defendant Exhibit "A" Dkt. 08 CR 242 (SAS) p. 02**

9.   The agents who were questioning me took me to another location somewhere in the airport.

10.   At the new location the agents, continuing to speak in English only, continued to say that if I did not answer their questions I would spend most of the rest of my life in jail.

11. I felt further intimidated and that if I did not answer their questions my wife and I would spend the rest of our lives in jail.

12.   After I spoke with the agents and answered some of their questions they asked me to sign some papers. I did not understand most of what was written on the papers because they were in English. I signed the papers because I believed if I did not do so my wife would not be released.

13.   No government agent or other person read me my "Miranda rights" (as my lawyer advises me they are called) at any time or advised me that I had a right to remain silent, a right to have a lawyer present during any questioning, that any statements I made could be used against me in a legal proceeding or any other advice of my rights while being detained.

14. I have learned from my lawyer that among the papers disclosed by the government in this case is a statement entitled "Advice of Rights" that I signed. I

3

**Defendant Exhibit "A" Dkt. 08 CR 242 (SAS) p. 03**

never read or signed any documents until after I answered the agents' questions. I did not understand the content of the papers, written in English, until my lawyer explained their meaning to me.

15. I have learned from my lawyer that also among the papers disclosed by the government in this case is a statement entitled "Consent to Search" that I signed in connection with the search of my cell phone and a "sim" card connected to it. I did not understand the content of this document, written in English, until my lawyer explained their meaning to me. I did not consent to the search of any of my property, including my cell phone.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. 28 U.S.C. §1746. Executed on July 17,2008 in Brooklyn, New York.

MIGUEL HINOJOSA-QUINONES
M H

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | | | Page 1 of 4 | |
|---|---|---|---|---|
| 1. Program Code | 2. Cross File | Related Files | 3. File No. ▮▮▮▮ | 4. G-DEP Identifier ▮▮▮▮ |
| 5. By: SA Michael R. Cogan<br>At: New York Field Division<br>Group D-32 | ☐<br>☐<br>☐<br>☐<br>☐ | | 6. File Title<br><br>HINOJOZA-Quinones, Miguel | |
| 7. ☐ Closed ☐ Requested Action Completed<br>☐ Action Requested By: | | | 8. Date Prepared<br>12/27/07 | |
| 9. Other Officers: SA Eric Conaway (NYFD DEA), SA Shawn Brew (NJ ICE) and SA John Gillespi (NJ DEA) | | | | |
| 10. Report Re: Post Arrest Statement of Miguel HINOJOZA-Quinones on 12-21-2007 at Newark Liberty International Airport. | | | | |

### SYNOPSIS

On December 21, 2007, Miguel HINOJOSA-Quinones and Monica GUBIS were arrested by members of the New York Field Division (FD) Enforcement Group D-32 along with agents from the Immigration and Customs Enforcement (ICE) group at Newark Liberty International Airport (NLIA) after approximately 2005 grams of heroin were seized from their luggage. It should be noted that HINOJOSA-Quinones and GUBIS arrived at NLIA aboard Continental Airlines #880, which originated in Bogota, Colombia.

### DETAILS



| 11. Distribution:<br>Division SARI, EPIC, WID<br><br>District<br><br>Other   Bogota CO   SA Jacobson | 12. Signature (Agent)<br>SA Michael R. Cogan | 13. Date<br>12/27/17 |
|---|---|---|
| | 14. Approved (Name and Title)<br>Robert McKnight<br>Group Supervisor | 15. Date<br>1.25.08 |

DEA Form      - 6
(Jul. 1996)
    mrc
3 - Originating Office

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

SARI 1/23/08
@ AST 28

**Defendant Exhibit "B" Dkt. 08 CR 242 (SAS) p. 01**

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | 3. File Title | |
| | HINOJOZA-Quinones, Miguel | |

| 4. | |
|---|---|
| Page 2 of 4 | |
| 5. Program Code | 6. Date Prepared |
| | 12/27/07 |

3. Incident to the arrest of HINOJOZA-Quinones he was read his "Miranda Rights" by Drug Enforcement Administration (DEA) SA Eric Conaway.

The "Miranda Rights" were read to HINOJOZA-Quinones as witnessed by SAs Lanzoni, Cogan, Gillespie (Newark DEA) and SA Sean Brew (ICE) which were signed by HINOJOZA-Quinones stating that he understood his rights. HINOJOZA-Quinones stated that he was willing to cooperate with the DEA and did not wish to have a lawyer present during questioning.

4. After being advised of his rights, HINOJOZA-Quinones stated the following in sum and substance. He stated the black bag that was in his wife's (Monica GUBIS-Acosta) possession at the time of their arrest was his. He stated his wife did not have any knowledge as to the contents of the bag.

5. HINOJOZA-Quinones stated that on 12/20/2007, he received a black play station bag containing heroin from an individual he knows as the "bodyguard" who works for Clara FRANCO-Giraldo in Bogota, Colombia. He stated he knew there was heroin in the bag that he was transporting to the US and that he was going to receive $16,000 (United States Currency) for transporting the heroin on behalf of the Clara FRANCO-Giraldo Drug Trafficking Organization (DTO). He stated that he later took a cab to his friend, Julian's LNU house, where he brought the black play station bag. HINOJOZA-Quinones stated he took the heroin to Julian's house so his wife would not see it and ask questions. He stated he later took a cab back to Julian's house at 12:45AM along with his wife and wife's cousin (unknown) where HINOJOZA-Quinones took the bag from Julian's house and back to his house for the trip to the United States (US) on December 21, 2007. Moments later, HINOJOZA-Quinones referred to Clara as the "Heroin Queen" and asked if the DEA was investigating her. HINOJOZA-Quinones stated that in his cellular phone FRANCO-Giraldo is referred to as Maria.

| DEA Form - 6a | DEA SENSITIVE | |
|---|---|---|
| (Jul. 1996) | Drug Enforcement Administration | |
| | | 3 - Originating Office |

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

Defendant Exhibit "B" Dkt. 08 CR 242 (SAS) p. 02

U.S. Department of Justice
Drug Enforcement Administration

| | | 1. File No. | 2. G-DEP Identifier |
|---|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | | ███████ | ███████ |
| | | 3. File Title | |
| | | HINOJOZA-Quinones, Miguel | |
| 4. Page 3 of 4 | | | |
| 5. Program Code | | 6. Date Prepared 12/27/07 | |

6. HINOJOZA-Quinones stated he was instructed by FRANCO-Giraldo and the "body guard" that several hours after his arrival in New York (NY) he was to call FRANCO-Giraldo and let her know that he arrived safely in with the heroin. HINOJOZA-Quinones stated he was then going to be contacted by an unknown party later that evening, which was going to receive the heroin in NY. HINOJOZA-Quinones stated that in addition to this task, he was also instructed by FRANCO-Giraldo to establish a Hot mail account for the purposes of communication with members of the DTO during this stay so that he could oversee approximately 6 individuals (mules) who were going to fly into various airports in NJ and NY with kilogram quantities of heroin.

7. HINOJOZA-Quinones stated in July 2007, he and GUBIS traveled to NLIA from Bogota, Colombia. HINOJOZA-Quinones stated that on this trip he brought approximately 2 kilograms of heroin secreted in his luggage. He stated the next day he purchased a cellular telephone from a Radio Shack in Brooklyn, NY. He stated two days after he purchased the phone he called the "Bodyguard" in Colombia and gave him the new number. The "Bodyguard" then called the contacts in NY and gave them HINOJOZA-Quinones' new number. HINOJOZA-Quinones stated that four hours later he received a call from the people in NY and made arrangements to meet with them for the transfer of the heroin. He stated he and GUBIS later took a cab to Washington Heights in Manhattan, NY where they met with a Dominican male who he did not know. He stated upon their arrival to Washington Heights he met with this Dominican male who paid him $16,000 in transportation fees for the heroin. He stated that GUBIS stayed in the cab and at no time did she know what was going on. He stated he and GUBIS later returned back to Colombia. It should be noted that HINOJOZA-Quinones stated before he left the US to return to Colombia he removed the sim card from the phone and threw it away.

8. HINOJOZA-Quinones stated that in July 2006 he and GUBIS flew to Miami from Bogota, CB. HINOJOZA-Quinones stated that on this trip he swallowed approximately 61 pellets of heroin totaling 630 grams of

DEA Form    - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

3 - Originating Office

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

30

**Defendant Exhibit "B" Dkt. 08 CR 242 (SAS) p. 03**

**U.S. Department of Justice**
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | 3. File Title | |
| 4.  Page  4  of  4 | HINOJOZA-Quinones, Miguel | |
| 5. Program Code | 6. Date Prepared    12/27/07 | |

heroin.  He stated that once they arrived in Miami he passed the heroin that he swallowed.  He stated that he later met with an unknown individual who he gave the heroin to.  He stated he was paid $9,600 in transportation fees.

9. HINOJOZA-Quinones stated that on several occasions while he was in the US he purchased televisions and computers and had them shipped back to Colombia where he sold them.  He stated he also wired approximately $3,600 six months ago from the US to Colombia.



DEA Form      - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

3 - Originating Office

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

31

**Defendant Exhibit "B" Dkt. 08 CR 242 (SAS) p. 04**

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 4

| 1. Program Code | | 2. Cross File | Related Files | 3. File No. | 4. G-DEP Identifier |
|---|---|---|---|---|---|
| 5. By: SA David L. Lanzoni, Jr. At: NYFD D-32 | | ☐ ☐ ☐ | | 6. File Title HINOJOZA, Miguel | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | ☐ ☐ | | 8. Date Prepared 12/21/07 | |

9. Other Officers: SAS Michael R. Cogan, Eric L. Conaway, Ron J. Collado & John Gillespie (NFD) & SA Sean Brew (ICE Newark)

10. Report Re: Arrest of Miguel HINOJOSA-QUINONES & Monica GUBIS and the Acquistion of Exhibit 1 and Exhibit N-1, N-2, N-3 & N-4 on December 21, 2007



### DETAILS

1. On December 21, 2007, at approximately 4:00 p.m. Miguel HINOJOZA-QUINONES arrived at Newark Liberty International Airport located in Newark, New Jersey. HINOJOZA arrived at the aforementioned location aboard a Continental Airlines flight from Bogota, Colombia. HINOJOZA was accompanied by his wife, Monica Rocio GUBIS.

2. Upon their arrival, HINOJOZA and GUBIS retrieved their baggage from the carousel and attempted to clear Customs. Both HINOJOZA and GUBIS were utilizing the services of an airport luggage "push-carts" once they had claimed their respective pieces of luggage. Upon their arrival at Customs and Border Protection (CBP) both HINOJOZA and GUBIS were approached by Agents of the same and both acknowledged that they were together and that they both shared a common interest in the aforementioned

| 11. Distribution: Division UID District SARI Other | 12. Signature (Agent) SA David L. Lanzoni, Jr. | 13. Date 1/9/08 |
|---|---|---|
| | 14. Approved (Name and Title) GS Robert W. McKnight Group Supervisor | 15. Date 1·23·08 |

DEA Form      - 6
(Jul. 1996)
DLL
3 - Originating Office

### DEA SENSITIVE
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

SARI 1/23/08
32

**Defendant Exhibit "B" Dkt. 08 CR 242 (SAS) p. 05**

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | | |
|---|---|---|
| *(Continuation)* | 1. File No. ▓▓▓▓▓▓ | 2. G-DEP Identifier ▓▓▓▓▓ |
| | 3. File Title HINOJOZA, Miguel | |

4.
Page  2  of  4
5. Program Code                                              6. Date Prepared
                                                                      12/21/07

pieces of luggage.  GUBIS and HINOJOZA were separated and subsequently
were subjected to search by CBP.



4.  Upon arrival at the ICE office HINOJOZA and GUBIS were separated and
advised of their rights.  HINOJOZA and GUBIS each signed a waiver of
rights sheet and agreed to talk to law enforcement (exhibits N-3 & N-4).
During his post arrest debriefing, HINOJOZA took full responsibility for
the heroin that had previously been recovered by Inspector Mitchell
despite that the fact that GUBIS was actually in possession of the bag at
the time the heroin was recovered. ▓▓▓▓▓▓▓



HINOJOZA was processed and subsequently transported to the Metropolitan
Detention Center located in Brooklyn, New York.  On his person at the time
of arrest HINOJOZA had a cellular telephone (exhibit N-1).  SA Ron Collado
took possession of exhibit N-1 on this same date.  HINOJOZA signed a
Consent to Search form (exhibit N-2) for the aforementioned telephone on
this same date as well.  SA Collado subsequently relinquished custody of
exhibit N-1 to the Digital Forensic Analysis Unit for review.

DEA Form     - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

3 - Originating Office

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**Defendant Exhibit "B" Dkt. 08 CR 242 (SAS) p. 06**

*N-3*

# ADVICE OF RIGHTS

Place _Newark, NJ Airport_
Date _12/21/07_
Time _600_

## YOUR RIGHTS
### BEFORE WE ASK YOU ANY QUESTIONS, DO YOU UNDERSTAND:

_MH_    You have the right to remain silent.

_MH_    Anything you say can be used against you in court.

_MH_    You have the right to talk to a lawyer for advice before we ask you any questions.

_MH_    You have the right to have a lawyer with you during the questioning.

_MH_    If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

Do you understand your rights?

Are you willing to answer some questions?

## WAIVER OF RIGHTS

[ / ] I have read or [ ✓ ] someone has read to me this advice of rights and I understand what my rights are. At this time, I am willing to freely and voluntarily answer questions without a lawyer present.

Signed x _Gurtee_

Witness: _S/A John Gillespie_    6:00pm 12/21/07

Witness: _SA Eric Conaway_    6:00pm 12/21/07

Time: _____

FORM DEA-13 (4-06)

**Defendant Exhibit "C" Dkt. 08 CR 242 (SAS) p. 01**

 

 U.S. DEPARTMENT OF HOMELAND SECURITY
IMMIGRATION & CUSTOMS ENFORCEMENT

## CONSENT TO SEARCH

I have been informed of my constitutional right not to have a search made of my
_____ **CELL PHONE** _____ without a search warrant.
_and one additional SIM CARD_
I also have been informed of my right to refuse to consent to the _____ **CELL PHONE** _____
being searched without a search warrant.

I have been warned that anything discovered during such a search may be used against me in
court or other proceedings.
                                    D. E. A.
I hereby authorize Special Agent(s) of U.S. ~~Immigration and Customs~~ Enforcement to conduct a
complete search of _____ **CELL PHONE** & Sim CARD _____ located at
_____ **NEWARK LIBERTY INTERNATIONAL AIRPORT** _____ and to take
therefrom any letters, papers, materials, information, or other property which they may desire.
I have given this authorization to the above Special Agent(s) voluntarily and without threats,
promises, pressure, or coercion of any kind.

PRINT NAME:   X  Miguel Angel Hinojosa

SIGNATURE:  _____        DATE:  12/21/07

Initial if appropriate:

He/She has also read the above.            ✓

Acknowledged that he/she understood.       ✓

He/She refused to sign.                    _____

X _____ 12/21/07            X _____
DHS/ICE Agent's Signature          DHS/ICE Agent's Signature
DEA LANZON                         DEA CONNAWAY

**Defendant Exhibit "D" Dkt. 08 CR 242 (SAS) p. 01**

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

No. 2117280

## CUSTODY RECEIPT FOR RETAINED OR SEIZED PROPERTY

CIS Handbook No. HB 5200-09

| 1. PORT 4601 | 2. SEIZURE NO. | 3. GENERAL ORDER NO. | 4. OTHER CONTROL NO. | 5. DATE RET/SEIZED 12/21/07 |
|---|---|---|---|---|
| 6. RETAINING/SEIZING OFFICER BRUCE MITCHELL | 7. TELEPHONE NO. 973-565-8000 | 8. NAME & TYPE OF CARRIER CO-88Ø COMM | | TIME OF DAY 1645 |

| 9. NAME & ADDRESS OF OWNER/CARRIER/CONSIGNEE MONICA GUBIS 241 TAAFFE PLACE, APT 701 BROOKLYN NY 11205 | 10. EIN/RS NO. | 11. NO. OF PKGS. | 12. APPROX. WGT. |
|---|---|---|---|
| | 13. ENTRY NO. (WHB, IT, TE, OTHER (DESCRIBE) | 14. SEAL OR OTHER ID NOS. (Bag, Tag, B/L, AWG) | |
| | | 15. IDENTIFYING MARKS PLACED ON SEIZURE | |

| 16. SECTION OF LAW VIOLATED OR REASON FOR RETENTION 18 USC 545 21 USC 952 | 17. IS PROPERTY TO BE HELD AS EVIDENCE? 1. YES—Give Line Item No(s). 2. NO  1 2 | 18. REMARKS (INCL. RECOMMENDED TYPE STORAGE, IF APPLICABLE) |
|---|---|---|

19. PORT DIRECTOR'S ADDRESS

### 20. PROPERTY (By Line Item) Attach CF 58 if conveyance.

| a LINE ITEM NO. | b DESCRIPTION | c CONDITION | d TYPE OF CONTAINER | e U/M | f QTY | g APPRAISED DOMESTIC VALUE | h HELD BY PORT |
|---|---|---|---|---|---|---|---|
| 2 | Black "TOTTO" Overnight Bag | Good | Suitcase | EA | 1 | | |

### 21. ACCEPTANCE/CHAIN OF CUSTODY

| a DATE | b BY - INDIVIDUAL, TITLE, ORGANIZATION | c ITEM(S) | d NO. OF UNITS | e SIGNATURE |
|---|---|---|---|---|
| 12/21/07 | Signature of Customs Officer BRUCE MITCHELL 8405 | 2 | 1 | Bruce Mitchell |
| 12/21/07 | A. Goldstein ICE S/A #4675 | 2 | All | |
| 12/21/07 | Eric Conorung DEA SA | 2 | All | Eric Conorung |
| | TOT DEA For Prosecution | | | |

| 22. NOTICE OF ABANDONMENT AND ASSENT TO FORFEITURE | I hereby abandon all claim to the above-described articles, line item(s) _____, and waive any further rights or proceedings relative to these articles, other than my right to file a petition for administrative relief. |
|---|---|
| | a. Signature of Importer | b. Date | c. Witness (Customs Officer) | d. Date |

COPIES: OWNER/CARRIER/CONSIGNEE/VIOLATOR; RETAINING/SEIZING OFFICER; FP&F OFFICER; TRANSPORTATION; OTHER TRANSFERS OF CUSTODY

*For Additional Items Use CF 6051A

Customs Form 6051 (120795)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA,

                                        08 Cr. 242 (SAS)

          -v-


MIGUEL HINOJOZA-QUINONES,

                    Defendant.
-------------------------------X

          MEMORANDUM OF LAW IN SUPPORT OF PRE-TRIAL MOTIONS
          FILED ON BEHALF OF DEFENDANT MIGUEL HINOJOZA-QUINONES

     The defendant MIGUEL HINOJOZA-QUINONES respectfully

submits this memorandum of law in support of his motion to

suppress statements and physical evidence and to obtain

rule 404(b) material and Brady/Giglio material.

     The facts on which defendant relies for this motion

and memorandum upon are set forth in the accompanying

Declaration of Robert J. Krakow, Esq., dated July 18, 2008

and its exhibits, and the Declaration of Miguel Hinojoza-

Quinones, dated July 17, 2008 and are summarized below.

                    STATEMENT OF FACTS

     Mr. Hinojoza-Quinones was indicted on one count of

distribution of narcotics in violation of the narcotics

laws of the United States (21 U.S.C. §846). After his

arrest on December 21, 2007 at the Newark, New Jersey

airport law enforcement agents questioned him about the

narcotics crimes in which he is alleged to have

participated. The agents intimidated Mr. Hinojoza-Quinones by threatening him with a long period of incarceration. They threatened that his wife, detained at the same time at the Newark airport, would spend a long time in jail, where she would be harmed, if Mr. Hinojoza-Quinones did not answer their questions. The agents promised Mr. Hinojoza-Quinones that if he answered the agents' questions about the drug transactions Mr. Hinojoza-Quinones's wife would be released.

Although Mr. Hinojoza-Quinones's native language is Spanish the agents spoke with him in English only.

Prior to questioning Mr. Hinojoza-Quinones and eliciting statements from him the agents did not advise Mr. Hinojoza-Quinones of his rights, failing to tell him about his right to remain silent, his right to counsel or any other rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966).

At some point in the investigation Mr. Hinojoza-Quinones's property was seized and searched, including a bag and his cell phone. No search warrant exists for the search and seizure.

Although the government produced documents purporting to be a consent to search and acknowledgment of providing "Miranda" warnings to Mr. Hinojoza-Quinones, he did not

view any papers until after he spoke with the agents and
made any statements, did not sign any papers until that
time and did not understand the content of the papers he
may have signed.

ARGUMENT

Point I

Mr. Hinojoza-Quinones's Oral Statement Must Be
Suppressed, Or an Evidentiary Hearing Held

By telling Mr. Hinojoza-Quinones that if he refused to
answer the agent's questions his wife would be sent to jail
for a long time and harmed there, the government agents
coerced Mr. Hinojoza-Quinones to provide a statement
against his will.

With respect to voluntariness, the following standards
have been established:

> "[T]he test for voluntariness [of confessions] is
> whether an examination of all the circumstances
> discloses that the conduct was such as to overbear
> [the defendant's] will to resist and bring about
> confessions not freely self-determined."   [internal
> citations omitted]

Terry v. LeFevre, 862 F.2d 409, 413 (2d Cir. 1988).

The test thus considers the totality of the
circumstances.  United States v. Anderson, 929 F.2d 96, 99
(2d Cir. 1991).

The agents' threat regarding Mr. Hinojoza-Quinones's wife, combined with the threats about Mr. Hinojoza-Quinones's incarceration and interrogation in a language in which Mr. Hinojoza-Quinones is not fluent, improperly coerced Mr. Hinojoza-Quinones to make his statement, under all the circumstances. Such a threat renders the circumstances of a confession involuntary. See, Lynumn v. Illinois, 372 U.S. 528, 534 (1963).

The government agents' failure to timely and properly issue Miranda warnings raises an independent basis for suppression. Since the statement was taken subsequent to arrest, the circumstances were custodial, and Miranda warnings were required prior to the interrogation. Miranda v. Arizona, 384 U.S. 436 (1966).

Accordingly, the statement must be suppressed in whole or in part.

### An Evidentiary Hearing Must Be Conducted

Although generally the burden of proof is placed on a defendant who seeks suppression of evidence, once the defense establishes a basis for the motion, such as an initial showing that a statement was not voluntary, or that a search was without a warrant, the burden of proof shifts to the government to show that the statement was voluntary or the warrantless search was reasonable. Unites States v.

<u>Matlock</u>, 415 U.S. 164 (1974); <u>United States v. Sacco</u>, 562
F. 2d 552 (2d Cir. ), <u>cert. denied</u>, 434 U.S. 1039 (1977)
<u>United States v. Ochs</u>, 461 F. supp. 1 (S.D.N.Y. 1978),
<u>aff'd mem</u>., 636 F.2d 1205 (2d Cir. 1980) <u>cert. denied</u>, 451
U.S. 1016 (1981).

Mr. Hinojoza-Quinones has raised serious claims
regarding the voluntariness and reliability of custodial
statements. Whether or not a statement is voluntary is
based on the totality of the circumstances. <u>Arizona v.</u>
<u>Fulminante</u>, 496 U.S. 903 (1991). A hearing is required
under the authority of the Fifth Amendment to the United
States Constitution so that this Court may base its
decision upon an adequate factual predicate.

<u>Point II</u>

<u>The Physical Evidence Must Be</u>
<u>Suppressed, or a Hearing Held</u>

A search of property, such as Mr. Hinojoza-Quinones's
cell phone under circumstances that are not exigent and
where police control over the property, requires a warrant,
when it is not impractical to obtain one. <u>Cf</u>., <u>Coolidge v.</u>
<u>New Hampshire</u>, 403 U.S. 443 (1971). Here there was no
warrant and no exigency as the agents had control over Mr.
Hinojoza-Quinones's cell phone. Absent probable cause and
exigency the search and seizure violates the Fourth

Amendment and the items seized must be suppressed, or an evidentiary hearing must be held.

## Point III

### Prior Bad Acts Evidence Should Be
### Identified and/or Disclosed Immediately

Federal Rule of Evidence 404(b) requires that the prosecution in a criminal case shall provide reasonable notice in advance of trial of the general nature of any evidence of other crimes or bad acts it intends to introduce at trial. Fed.R.Evid. 404(b).  There is substantial precedent for disclosure of 404(b) evidence sufficiently in advance of trial to allow the defendant to prepare for trial in factually complex indictments, such as the instant case.  See United States v. Heatley, 994 F.Supp. 483 at 491, (S.D.N.Y. 1998)(requiring disclosure three weeks before trial); United States v. Henderson, No. 96 Cr. 221, 1997 WL 567935 at 2 (N.D.N.Y. Sept. 5, 1997) (directing disclosure "reasonably in advance of trial" in a conspiracy case); United States v. Wilson, No. 95 Cr. 668, 1997 WL 10035 at 3 (S.D.N.Y. Jan. 10, 1997) (directing disclosure thirty days before); United States v. Padilla, 1994 WL 681812 at 13 (requiring disclosure fourteen days before trial).

Under the facts of this case, where there is some suggestion in the discovery received from the government that there may be other conduct similar to the one charged in the indictment, it is respectfully submitted, the defendant cannot adequately prepare his defense in a meaningful way until the government has disclosed the particulars of 404(b) evidence.

The government's usual procedure is that it will not disclose the particulars of prior crimes evidence until the eve of trial. Often the prior crimes evidence is complex and requires detailed investigation. The government thus precludes the defense from evaluating a crucial portion of the government's case until the eve of trial. There is no reason for the government to withhold this evidence other than pure gamesmanship. No prejudice to the government's case will be caused by disclosure of this information.

On the other hand, the defendant will suffer great prejudice if he must remain ignorant of the government's claims concerning prior bad acts.  The identification or disclosure of other proof should be disclosed sufficiently in advance of trial to allow the defendant to properly prepare his defense. Under these circumstances, therefore, it is reasonable to require the government to provide the defendant with this information immediately so that the

information can be adequately investigated and evaluated
prior to trial.

<u>Point IV</u>

The Court Should Direct Disclosure
<u>Of Brady/Giglio Material to the Defense</u>

The government is under a constitutional duty to
disclose favorable evidence to the accused where such
evidence is material to guilt. <u>Brady v. Maryland</u>, 373 U.S.
83 (1963). Such material includes evidence that tends to
impeach the credibility of a government witness. <u>Giglio v.
United States</u>, 405 U.S. 150 (1974). The government's
potential reliance upon witnesses in the case at bar
requires timely, pre-trial disclosure of material, even if
discredited by the government, tending to impeach those
witnesses' testimony. Early disclosure is necessary to
enable the defendant to establish and follow investigative
leads and thus muster a defense at trial.

Material and information reflecting crimes committed
by government witnesses, and other <u>Brady</u>/<u>Giglio</u> material,
must be provided without regard to whether it exists in
written form. Furthermore, any statements of a co-
conspirator whom the Government does <u>not</u> intend to call as
a witness, which statement does <u>not</u> mention Mr. Hinojoza-
Quinones, should also be provided as <u>Brady</u> material, as

8

such a statement would have some tendency to show that he was not a member of the conspiracy.  Mr. Hinojoza-Quinones seeks the foregoing specific material without limitation and with the understanding that a general request for Brady/Giglio material is also advanced.

<u>LEAVE TO FILE ADDITIONAL MOTIONS</u>

The defense has endeavored to include in this motion all forms of pre-trial relief that may properly be requested at this time, based on the information known to the defendant. Should this case assume a different posture at a later date due, for example, to the availability or unavailability of evidence, the Court is respectfully requested to grant leave to the defendant to make such further motions as it may deem appropriate at a future date.

CONCLUSION

For the foregoing reasons, the Court should Order that the statements alleged to have been made by Mr. Hinojoza-Quinones must be suppressed or an evidentiary hearing conducted, the physical evidence should be suppressed, or an evidentiary hearing conducted, 404(b) and Brady material should be produced, and such other and further relief as the Court may deem just and proper.

Dated:     New York, New York
           July 18, 2008

                              Respectfully submitted,


                              _____
                              Robert J. Krakow
                              Attorney for
                              HINOJOZA-QUINONES
                              1205 Franklin Avenue
                              Suite 110
                              Garden City, NY 11530
                              (516) 354-3300

By ECF to:
A.U.S.A. John Cronan