UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X      Dkt. No. 08 Cr. 242 (SAS)
UNITED STATES OF AMERICA,

DECLARATION

        -v-


MIGUEL HINOJOZA-QUINONES,

                    Defendant.
-------------------------------X

    ROBERT J. KRAKOW, pursuant to 28 U.S.C. § 1746 hereby
affirms under penalty of perjury:

    1.      I am an attorney duly admitted to practice in the
United States District Court for the Southern District of New
York and have been assigned to represent MIGUEL HINOJOZA-
QUINONES in the above-captioned indictment

    2.      I am familiar with some of the facts and
circumstances surrounding this prosecution. With respect to
portions of this declaration that are based upon information
and belief, the sources of my information and belief are
examination of documents provided to me by the United States
Attorney's office and Mr. HINOJOZA-QUINONES's supporting
declaration that is annexed hereto as Exhibit "A".

    3.      I make this affirmation in support of Mr.
HINOJOZA-QUINONES's pre-trial motions for:

    (a)  suppression of oral statements on the grounds of
involuntariness and the government agents' failure to
properly issue Miranda warnings or alternatively, an
evidentiary hearing on the issue of the admissibility of the
oral statements;

(b) suppression of physical evidence, to wit, physical evidence, including a bag and its contents seized from the defendant or his wife, and other items, including a cell phone and any information or data contained therein and other material;

(c) early disclosure of proof of other crimes or conduct the government will seek to introduce at trial pursuant to Fed. R. Evid. 404(b);

(d) provision by the government of Brady/Giglio material to the defense;

(e) leave to file additional motions; and,

(f) such other and further relief as the Court may deem just and proper.

4.    Mr. HINOJOZA-QUINONES is charged in an indictment with one count of conspiracy to violate the narcotics laws of the United States in distributing heroin, in violation of 21 U.S.C. Sections 812. 841(a)(1) and 841(b)(1)(a). The indictment, which is part of the Court's file and docket, is respectfully incorporated by reference.

5.    Mr. HINOJOZA-QUINONES has been arraigned upon the indictment and has entered a plea of not guilty.

6.    No prior application has been made for any of the relief requested herein.

MOTION TO SUPPRESS STATEMENTS
OR FOR AN EVIDENTIARY HEARING

7.     The following allegations of fact are made entirely upon information and belief.

8.     On December 21, 2007 Mr. HINOJOZA-QUINONES was taken into custody by law enforcement agents in the Newark, New Jersey airport. He is alleged to have possessed a bag containing heroin that he was going to deliver to another person. Mr. HINOJOZA-QUINONES was accompanied by his wife at the time he was arrested.

9.     The agents accused Mr. HINOJOZA-QUINONES of engaging in criminal activity and questioned him extensively.

10.     The government has produced a report that contains statements allegedly made by Mr. HINOJOZA-QUINONES that the government will seek to introduce as evidence at trial. The report is annexed hereto as Exhibit "B". [1]

11.     During the interrogation of Mr. HINOJOZA-QUINONES the agents stated that if Mr. HINOJOZA-QUINONES did not confess to the agents and answer their questions he would face many years in prison.

12.     The agents said that if Mr. HINOJOZA-QUINONES answered the agents' questions about drug trafficking and cooperated with them Mr. HINOJOZA-QUINONES's wife would be released. On the other hand, the agents told Mr. HINOJOZA-QUINONES that if he did not answer the agents' questions his

---

[1] This document is numbered pages "28" to "33" in the government's document production referred to in the government's letter to counsel dated April 8, 2008.

wife would be sent to prison for many years. The agents made statements suggesting that great and offensive harm would come to Mr. HINOJOZA-QUINONES'S wife in prison.

13.     The agents spoke with Mr. HINOJOZA-QUINONES in English only even though Mr. HINOJOZA-QUINONES's native language is Spanish.

14.     Mr. HINOJOZA-QUINONES has a poor understanding of English, although he does speak and understand some rudimentary English.

15.     Mr. HINOJOZA-QUINONES did answer some of the agents' questions because, after having been threatened and manipulated by the agents' statements, he believed that if he refused to do so his wife would be sent to jail and harmed.

16.     Prior to questioning Mr. HINOJOZA-QUINONES the agents never advised Mr. HINOJOZA-QUINONES of his right to remain silent, his right to have the advice of a lawyer, the fact that any statements he made could be used against him in a legal proceeding or any of the other rights associated with Miranda v. Arizona, 384 U.S. 436 (1966).

17.     Among the documents produced by the government as discovery in this matter is a document captioned "Your Rights."[2] The document is alleged by the government to have been signed by Mr. HINOJOZA-QUINONES acknowledging that he was advised of his "Miranda" warnings. The form captioned

---

[2] This document is numbered "26" in the government's document production referred to in the government's letter to counsel dated April 8, 2008.

"ADVICE OF RIGHTS" and "YOUR RIGHTS" is annexed as Exhibit "C".

18.     Another document produced by the government in discovery was a document captioned "Consent to Search" that refers to a search of a cell phone. It is annexed as Exhibit "D".[3]

19.     Mr. HINOJOZA-QUINONES signed some papers given to him after he spoke with the agents.

20.     Mr. HINOJOZA-QUINONES did not fully understand the content of the papers or that they contained advice about his rights and included his grant of consent to search Mr. HINOJOZA-QUINONES or his possessions.

21.     Mr. HINOJOZA-QUINONES's statements were not made voluntarily. The government agents were obligated under law to provide <u>Miranda</u> warnings but they did not give any warnings or information regarding Mr. Mr. HINOJOZA-QUINONES's rights prior to the time they questioned him or obtained statements from him.

22.     Any custodial statements made by Mr. HINOJOZA-QUINONES were obtained in violation of his right to remain silent, his right to counsel and other applicable rights. The statements were taken in violation of Mr. HINOJOZA-QUINONES's privilege against self-incrimination and his right to due process under the Fifth Amendment to the United States Constitution.

23.    Suppression of the statements allegedly obtained from Mr. HINOJOZA-QUINONES by law enforcement agents is respectfully requested.

24.    For the reasons set forth in the annexed memorandum, a pre-trial hearing must be held on the issues raised herein.

MOTION TO SUPPRESS PHYSICAL EVIDENCE

25.    According to the government various items were seized from Mr. HINOJOZA-QUINONES and searched. These include a "black 'Totto' overnight bag, a cell phone and other items. Some of these items are listed on a document produced by the government in discovery captioned "Custody Receipt For Retained or Seized Property" annexed hereto as Exhibit "E".[4]

26. Mr. HINOJOZA-QUINONES did not consent to the search or seizure of her person or any items in his possession.

27.    The search or seizure of any items alleged by the government to be possessed by Mr. HINOJOZA-QUINONES should be suppressed as the government agents had an insufficient predicate and lacked probable cause to search or seize said items.

28.    Upon information and belief, the search of Mr. HINOJOZA-QUINONES or his property, including his cell phone,

---

[3] This document is numbered "27" in the government's document production referred to in the government letter to counsel dated April 8, 2008.

was performed without a search warrant from any governmental authority.

29. The search of Mr. HINOJOZA-QUINONES and any property in his possession was unlawful. The search was conducted without probable cause and was an unreasonable intrusion conducted without a search warrant without justification under the circumstances that existed.

30. Mr. HINOJOZA-QUINONES seeks to suppress any evidence seized as a result of the unlawful search.

31. Leave is requested to supplement this motion if new facts are obtained in the course of these proceedings.

MOTION FOR EARLY NOTICE BY THE
GOVERNMENT OF FED. R. EVID. 404(b)
EVIDENCE OF OTHER CRIMES, WRONGS OR BAD ACTS

32. Mr. HINOJOZA-QUINONES respectfully moves this Court to direct the government to provide him with notice of its intention to use evidence of "other crimes wrongs or acts" of the defendants, as that phrase is used in Rule 404(b), Fed. R. Evid., and of the nature of any such evidence it intends to introduce at trial.

33. To date, the government has not identified any such evidence or their intention to introduce such evidence at the trial of this matter. It is often the case, however, that the facts underlying such evidence are complex, requiring substantial trial preparation by the defendant.

34. There is no reason in this case why the government

---

[4] This document is numbered "34" in the government's document production referred to in the government's letter to counsel

cannot provide disclosure of 404(b) evidence well in advance
of trial. To do otherwise would exhibit gamesmanship that
would unfairly prejudice the defendant's ability to prepare a
defense and to properly litigate a motion *in limine*.

35.   Accordingly, it is respectfully requested that the
Court direct disclosure of the existence and substance of any
404(b) evidence immediately or, in the alternative, not later
than six weeks prior to trial.

PROVISION OF BRADY/GIGLIO MATERIAL

36.   It is respectfully requested that the government
be directed to provide to the defense any and all material
that falls within the purview of Brady v. Maryland, 373 U.S.
83 (1963) and Giglio v. United States, 405 U.S. 150 (1974).

37.   The government's case will undoubtedly include
the testimony of alleged co-conspirators, whose credibility
is called into doubt by, inter alia, the crimes in which
he/she has participated to date.  Material and information
reflecting such crimes, and other Brady/Giglio material, must
be provided without regard to whether it exists in written
form.  Furthermore, any statements of a co-conspirator whom
the Government does not intend to call as a witness that does
not mention Mr. HINOJOZA-QUINONES should also be provided as
Brady material, as such a statement would have some tendency
to show that he was not a member of the conspiracy.   Mr.
HINOJOZA-QUINONES makes the foregoing specific requests

---

dated April 8, 2008.

8

without limitation and with the understanding that a general request for Brady/Giglio material is also advanced.

LEAVE TO MAKE FURTHER MOTIONS

38.  The defense has endeavored to include in this motion all forms of pre-trial relief that may properly be requested at this time, based on the information known to the defendant.  Should this case assume a different posture at a later date due, for example, to the availability or unavailability of evidence, the Court is respectfully requested to grant leave to the defendant to make such further motions as it may deem appropriate at a future date.

WHEREFORE, MIGUEL HINOJOZA-QUINONES respectfully requests that Orders issue granting to the defendant the relief sought in the instant motion, together with such other and further relief as this Court may deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. 28 U.S.C. §1746. Executed July 18, 2008.

_____
ROBERT J. KRAKOW

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X    Dkt. No. 08 Cr. 242 (SAS)
UNITED STATES OF AMERICA,

                                        DECLARATION

          -v-


MIGUEL HINOJOZA-QUINONES,

                    Defendant.
------------------------------X

     MIGUEL HINOJOZA-QUINONES, pursuant to 28 U.S.C. § 1746
hereby affirms under penalty of perjury:

     1.    I am the defendant in the captioned indictment that
charges me with committing serious crimes. I am represented by
Robert J. Krakow on whom I rely to make all legal arguments on
my behalf. This declaration is respectfully submitted in
support of a motion to suppress statements allegedly made by
me to law enforcement authorities. It is also offered in
support of my motion to suppress physical evidence.

     2. My lawyer drafted this declaration after I told him
about my case and answered his questions. It contains
information I have provided to my lawyer but it does not
contain all of the information or details that I have given
to him about this case. This declaration has been
translated into Spanish for me by an English/Spanish
interpreter.

Defendant Exhibit "A" Dkt. 08 CR 242 (SAS) p. 01

3. I was arrested on December 21, 2007 by government agents at the Newark Liberty International Airport. My wife, Monica Gubis, was arrested at the same time.

4. Shortly after my arrest, government agents questioned me. The agents spoke to me in English only even though my primary language is Spanish and I poorly understand and speak English. I did not understand a great deal of what the agents said to me.

5. I did understand that the agents threatened that if I did not answer their questions they would make sure that my wife went to jail. On the other hand, I understood also from what the agents told me that if I cooperated by answering their questions they would release my wife.

6. The agents also told me that if my wife were sent to jail she would likely be harmed — they said, "you know what happens to women in jail" or words I understood to have that meaning.

7. The agents told me that if I did not answer their questions I would face a sentence of 15 years to life in jail.

8. After being threatened and manipulated in this fashion I began to answer the agents' questions. I did so because I believed that if I refused to answer the questions my wife would be sent to jail and harmed.

**Defendant Exhibit "A" Dkt. 08 CR 242 (SAS) p. 02**

9.   The agents who were questioning me took me to another location somewhere in the airport.

10.  At the new location the agents, continuing to speak in English only, continued to say that if I did not answer their questions I would spend most of the rest of my life in jail.

11. I felt further intimidated and that if I did not answer their questions my wife and I would spend the rest of our lives in jail.

12.  After I spoke with the agents and answered some of their questions they asked me to sign some papers. I did not understand most of what was written on the papers because they were in English. I signed the papers because I believed if I did not do so my wife would not be released.

13.  No government agent or other person read me my "Miranda rights" (as my lawyer advises me they are called) at any time or advised me that I had a right to remain silent, a right to have a lawyer present during any questioning, that any statements I made could be used against me in a legal proceeding or any other advice of my rights while being detained.

14. I have learned from my lawyer that among the papers disclosed by the government in this case is a statement entitled "Advice of Rights" that I signed. I

Defendant Exhibit "A" Dkt. 08 CR 242 (SAS) p. 03

never read or signed any documents until after I answered the agents' questions. I did not understand the content of the papers, written in English, until my lawyer explained their meaning to me.

15. I have learned from my lawyer that also among the papers disclosed by the government in this case is a statement entitled "Consent to Search" that I signed in connection with the search of my cell phone and a "sim" card connected to it. I did not understand the content of this document, written in English, until my lawyer explained their meaning to me. I did not consent to the search of any of my property, including my cell phone.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. 28 U.S.C. §1746. Executed on July 17, 2008 in Brooklyn, New York.

MIGUEL HINOJOSA-QUINONES
M H

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 4

| 1. Program Code | 2. Cross File | Related Files | 3. File No. | 4. G-DEP Identifier |
|---|---|---|---|---|
| 5. By: SA Michael R. Cogan<br><br>At: New York Field Division<br>Group D-32 | ☐<br>☐<br>☐<br>☐<br>☐ | | 6. File Title<br><br>HINOJOZA-Quinones, Miguel | |
| 7. ☐ Closed ☐ Requested Action Completed<br>☐ Action Requested By: | | | 8. Date Prepared<br>12/27/07 | |

9. Other Officers: SA Eric Conaway (NYFD DEA), SA Shawn Brew (NJ ICE) and SA John Gillespi (NJ DEA)

10. Report Re: Post Arrest Statement of Miguel HINOJOZA-Quinones on 12-21-2007 at Newark Liberty International Airport.

### SYNOPSIS

On December 21, 2007, Miguel HINOJOSA-Quinones and Monica GUBIS were arrested by members of the New York Field Division (FD) Enforcement Group D-32 along with agents from the Immigration and Customs Enforcement (ICE) group at Newark Liberty International Airport (NLIA) after approximately 2005 grams of heroin were seized from their luggage. It should be noted that HINOJOSA-Quinones and GUBIS arrived at NLIA aboard Continental Airlines #880, which originated in Bogota, Colombia.

### DETAILS

| 11. Distribution:<br>Division SARI, EPIC, WID<br><br>District<br><br>Other  Bogota CO  SA Jacobson | 12. Signature (Agent)<br>SA Michael R. Cogan | 13. Date<br>12/27/17 |
|---|---|---|
| | 14. Approved (Name and Title)<br>Robert McKnight<br>Group Supervisor | 15. Date<br>1.2.3.05 |

DEA Form    - 6
(Jul. 1996)
    mrc
3 - Originating Office

DEA SENSITIVE
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

SARI 1/23/08
@AST 28

**Defendant Exhibit "B" Dkt. 08 CR 242 (SAS) p. 01**

U.S. Department of Justice
Drug Enforcement Administration

| | | 1. File No. | 2. G-DEP Identifier |
|---|---|---|---|
| **REPORT OF INVESTIGATION** | | ▬▬▬▬▬ | ▬▬▬▬▬ |
| *(Continuation)* | | 3. File Title | |
| 4. | | HINOJOZA-Quinones, Miguel | |
| Page  2  of  4 | | | |
| 5. Program Code | | 6. Date Prepared | |
| | | 12/27/07 | |

3. Incident to the arrest of HINOJOZA-Quinones he was read his "Miranda Rights" by Drug Enforcement Administration (DEA) SA Eric Conaway.

The "Miranda Rights" were read to HINOJOZA-Quinones as witnessed by SAs Lanzoni, Cogan, Gillespie (Newark DEA) and SA Sean Brew (ICE) which were signed by HINOJOZA-Quinones stating that he understood his rights. HINOJOZA-Quinones stated that he was willing to cooperate with the DEA and did not wish to have a lawyer present during questioning.

4. After being advised of his rights, HINOJOZA-Quinones stated the following in sum and substance. He stated the black bag that was in his wife's (Monica GUBIS-Acosta) possession at the time of their arrest was his. He stated his wife did not have any knowledge as to the contents of the bag.

5. HINOJOZA-Quinones stated that on 12/20/2007, he received a black play station bag containing heroin from an individual he knows as the "bodyguard" who works for Clara FRANCO-Giraldo in Bogota, Colombia. He stated he knew there was heroin in the bag that he was transporting to the US and that he was going to receive $16,000 (United States Currency) for transporting the heroin on behalf of the Clara FRANCO-Giraldo Drug Trafficking Organization (DTO). He stated that he later took a cab to his friend, Julian's LNU house, where he brought the black play station bag. HINOJOZA-Quinones stated he took the heroin to Julian's house so his wife would not see it and ask questions. He stated he later took a cab back to Julian's house at 12:45AM along with his wife and wife's cousin (unknown) where HINOJOZA-Quinones took the bag from Julian's house and back to his house for the trip to the United States (US) on December 21, 2007. Moments later, HINOJOZA-Quinones referred to Clara as the "Heroin Queen" and asked if the DEA was investigating her. HINOJOZA-Quinones stated that in his cellular phone FRANCO-Giraldo is referred to as Maria.

**DEA SENSITIVE**
Drug Enforcement Administration

3 - Originating Office

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

Defendant Exhibit "B" Dkt. 08 CR 242 (SAS) p. 02

U.S. Department of Justice
Drug Enforcement Administration

| | | |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | 1. File No. ▮▮▮▮▮ | 2. G-DEP Identifier ▮▮▮▮ |
| | 3. File Title HINOJOZA-Quinones, Miguel | |
| 4. Page  3  of  4 | | |
| 5. Program Code | 6. Date Prepared 12/27/07 | |

6. HINOJOZA-Quinones stated he was instructed by FRANCO-Giraldo and the "body guard" that several hours after his arrival in New York (NY) he was to call FRANCO-Giraldo and let her know that he arrived safely in with the heroin. HINOJOZA-Quinones stated he was going to be contacted by an unknown party later that evening, which was going to receive the heroin in NY. HINOJOZA-Quinones stated that in addition to this task, he was also instructed by FRANCO-Giraldo to establish a Hot mail account for the purposes of communication with members of the DTO during this stay so that he could oversee approximately 6 individuals (mules) who were going to fly into various airports in NJ and NY with kilogram quantities of heroin.

7. HINOJOZA-Quinones stated in July 2007, he and GUBIS traveled to NLIA from Bogota, Colombia. HINOJOZA-Quinones stated that on this trip he brought approximately 2 kilograms of heroin secreted in his luggage. He stated the next day he purchased a cellular telephone from a Radio Shack in Brooklyn, NY. He stated two days after he purchased the phone he called the "Bodyguard" in Colombia and gave him the new number. The "Bodyguard" then called the contacts in NY and gave them HINOJOZA-Quinones' new number. HINOJOZA-Quinones stated that four hours later he received a call from the people in NY and made arrangements to meet with them for the transfer of the heroin. He stated he and GUBIS later took a cab to Washington Heights in Manhattan, NY where they met with a Dominican male who he did not know. He stated upon their arrival to Washington Heights he met with this Dominican male who paid him $16,000 in transportation fees for the heroin. He stated that GUBIS stayed in the cab and at no time did she know what was going on. He stated he and GUBIS later returned back to Colombia. It should be noted that HINOJOZA-Quinones stated before he left the US to return to Colombia he removed the sim card from the phone and threw it away.

8. HINOJOZA-Quinones stated that in July 2006 he and GUBIS flew to Miami from Bogota, CB. HINOJOZA-Quinones stated that on this trip he swallowed approximately 61 pellets of heroin totaling 630 grams of

---

| | | |
|---|---|---|
| DEA Form    - 6a (Jul. 1996) | **DEA SENSITIVE** Drug Enforcement Administration | **3** - Originating Office |

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

Defendant Exhibit "B" Dkt. 08 CR 242 (SAS) p. 03

**U.S. Department of Justice**
Drug Enforcement Administration

| | |
|---|---|
| **REPORT OF INVESTIGATION**<br>*(Continuation)* | 1. File No.     2. G-DEP Identifier |
| | 3. File Title<br>HINOJOZA-Quinones, Miguel |
| 4.<br>Page 4 of 4 | |
| 5. Program Code | 6. Date Prepared<br>12/27/07 |

heroin. He stated that once they arrived in Miami he passed the heroin that he swallowed. He stated that he later met with an unknown individual who he gave the heroin to. He stated he was paid $9,600 in transportation fees.

9. HINOJOZA-Quinones stated that on several occasions while he was in the US he purchased televisions and computers and had them shipped back to Colombia where he sold them. He stated he also wired approximately $3,600 six months ago from the US to Colombia.



**DEA SENSITIVE**
Drug Enforcement Administration

3 - Originating Office

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

31

**Defendant Exhibit "B" Dkt. 08 CR 242 (SAS) p. 04**

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 4

| 1. Program Code | | 2. Cross File | Related Files | 3. File No. | 4. G-DEP Identifier |
|---|---|---|---|---|---|
| 5. By: SA David L. Lanzoni, Jr<br>At: NYFD D-32 | | ☐ ☐ ☐ | | 6. File Title HINOJOZA, Miguel | |
| 7. ☐ Closed ☐ Requested Action Completed<br>☐ Action Requested By: | | ☐ ☐ | | 8. Date Prepared<br>12/21/07 | |

9. Other Officers: SAS Michael R. Cogan, Eric L. Conaway, Ron J. Collado & John Gillespie (NFD) & SA Sean Brew (ICE Newark)

10. Report Re: Arrest of Miguel HINOJOSA-QUINONES & Monica GUBIS and the Acquistion of Exhibit 1 and Exhibit N-1, N-2, N-3 & N-4 on December 21, 2007



## DETAILS

1.  On December 21, 2007, at approximately 4:00 p.m. Miguel HINOJOZA-QUINONES arrived at Newark Liberty International Airport located in Newark, New Jersey. HINOJOZA arrived at the aforementioned location aboard a Continental Airlines flight from Bogota, Colombia. HINOJOZA was accompanied by his wife, Monica Rocio GUBIS.

2.  Upon their arrival, HINOJOZA and GUBIS retrieved their baggage from the carousel and attempted to clear Customs. Both HINOJOZA and GUBIS were utilizing the services of an airport luggage "push-carts" once they had claimed their respective pieces of luggage. Upon their arrival at Customs and Border Protection (CBP) both HINOJOZA and GUBIS were approached by Agents of the same and both acknowledged that they were together and that they both shared a common interest in the aforementioned

| 11. Distribution:<br>Division  UID | 12. Signature (Agent)<br>SA David L. Lanzoni, Jr. | 13. Date<br>1/9/08 |
|---|---|---|
| District  SARI | 14. Approved (Name and Title)<br>GS Robert W. McKnight<br>Group Supervisor | 15. Date<br>1·23·08 |
| Other | | |

DEA Form     - 6
(Jul. 1996)
DLL
3 - Originating Office

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| | | 1. File No. | 2. G-DEP Identifier |
|---|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | | | |
| | | 3. File Title HINOJOZA, Miguel | |
| 4. Page  2  of  4 | | | |
| 5. Program Code | | 6. Date Prepared  12/21/07 | |

pieces of luggage.  GUBIS and HINOJOZA were separated and subsequently were subjected to search by CBP.



4.  Upon arrival at the ICE office HINOJOZA and GUBIS were separated and advised of their rights.  HINOJOZA and GUBIS each signed a waiver of rights sheet and agreed to talk to law enforcement (exhibits N-3 & N-4).  During his post arrest debriefing, HINOJOZA took full responsibility for the heroin that had previously been recovered by Inspector Mitchell despite that the fact that GUBIS was actually in possession of the bag at the time the heroin was recovered.



HINOJOZA was processed and subsequently transported to the Metropolitan Detention Center located in Brooklyn, New York.  On his person at the time of arrest HINOJOZA had a cellular telephone (exhibit N-1).  SA Ron Collado took possession of exhibit N-1 on this same date.  HINOJOZA signed a Consent to Search form (exhibit N-2) for the aforementioned telephone on this same date as well.  SA Collado subsequently relinquished custody of exhibit N-1 to the Digital Forensic Analysis Unit for review.

DEA Form      - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

3 - Originating Office

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 9/94 may be used.

33

**Defendant Exhibit "B" Dkt. 08 CR 242 (SAS) p. 06**

*N-3*

# ADVICE OF RIGHTS

Place _Newark, NJ Airport_
Date _12/21/07_
Time _6:00_

## YOUR RIGHTS

### BEFORE WE ASK YOU ANY QUESTIONS, DO YOU UNDERSTAND:

_MH_   You have the right to remain silent.

_MH_   Anything you say can be used against you in court.

_MH_   You have the right to talk to a lawyer for advice before we ask you any questions.

_MH_   You have the right to have a lawyer with you during the questioning.

_MH_   If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

Do you understand your rights?

Are you willing to answer some questions?

## WAIVER OF RIGHTS

[ / ] I have read or [ ✓ ] someone has read to me this advice of rights and I understand what my rights are. At this time, I am willing to freely and voluntarily answer questions without a lawyer present.

Signed x _GhudHe_

Witness: _S/A John Gillespie_    6:00pm   12/21/07

Witness: _SA Eric Conaway_    6:00pm   12/21/07

Time: _____

FORM DEA-13 (4-06)

 *DEA*     *N-2*

 ~~U.S. DEPARTMENT OF HOMELAND SECURITY~~
~~IMMIGRATION & CUSTOMS ENFORCEMENT~~

## CONSENT TO SEARCH

I have been informed of my constitutional right not to have a search made of my
**CELL PHONE** without a search warrant.

*and one additional SIM CARD*

I also have been informed of my right to refuse to consent to the ___ **CELL PHONE** ___
being searched without a search warrant.

I have been warned that anything discovered during such a search may be used against me in
court or other proceedings.

*D. E. A.*

I hereby authorize Special Agent(s) of U.S. ~~Immigration and Customs~~ Enforcement to conduct a
complete search of ___ **CELL PHONE** *& SIM CARD* ___ located at
___ **NEWARK LIBERTY INTERNATIONAL AIRPORT** ___ and to take
therefrom any letters, papers, materials, information, or other property which they may desire.
I have given this authorization to the above Special Agent(s) voluntarily and without threats,
promises, pressure, or coercion of any kind.

PRINT NAME:   ✗ *Miguel Angel Hinojosa*

SIGNATURE: _____     DATE: *12/21/07*

---

Initial if appropriate:

He/She has also read the above.        *✓*

Acknowledged that he/she understood.     *✓*

He/She refused to sign.        _____

✗ _____ *12/21/07*           ✗ _____

~~DHS/ICE~~ Agent's Signature            ~~DHS/ICE~~ Agent's Signature

*DEA LAWSON*               *DEA CONNALLY*

27

**Defendant Exhibit "D" Dkt. 08 CR 242 (SAS) p. 01**

No. 2117280

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

## CUSTODY RECEIPT FOR RETAINED OR SEIZED PROPERTY

CIS Handbook No. HB 5200-09

| 1. PORT 4601 | 2. SEIZURE NO. | 3. GENERAL ORDER NO. | 4. OTHER CONTROL NO. | 5. DATE RET/SEIZED 12/21/07 |
|---|---|---|---|---|
| 6. RETAINING/SEIZING OFFICER BRUCE MITCHELL | 7. TELEPHONE NO. 973-565-8000 | 8. NAME & TYPE OF CARRIER CO-886 COMM | | TIME OF DAY 1645 |
| 9. NAME & ADDRESS OF OWNER/CARRIER/CONSIGNEE MONICA GUBIS 241 TAAFFE PLACE, APT 701 BROOKLYN NY 11205 | 10. EIN/RS NO. | 11. NO. OF PKGS. | 12. APPROX. WGT. | |

| 13. ENTRY NO. (WHB, IT, TE, OTHER (DESCRIBE) | 14. SEAL OR OTHER ID NOS. (Bag, Tag, B/L, AWG) |
|---|---|
| | 15. IDENTIFYING MARKS PLACED ON SEIZURE |

| 16. SECTION OF LAW VIOLATED OR REASON FOR RETENTION 18 USC 545 21 USC 952 | 17. IS PROPERTY TO BE HELD AS EVIDENCE? 1. YES—Give Line Item No(s). 2. NO  1  2 | 18. REMARKS (INCL. RECOMMENDED TYPE STORAGE, IF APPLICABLE) |
|---|---|---|

19. PORT DIRECTOR'S ADDRESS

### 20. PROPERTY (By Line Item) Attach CF 58 if conveyance.

| a LINE ITEM NO. | b DESCRIPTION | c CONDITION | d TYPE OF CONTAINER | e U/M | f QTY | g APPRAISED DOMESTIC VALUE | h HELD BY PORT |
|---|---|---|---|---|---|---|---|
| 2 | Black "TOTTO" Overnight Bag | Good | Suitcase | EA | 1 | | |

### 21. ACCEPTANCE/CHAIN OF CUSTODY

| a DATE | b BY - INDIVIDUAL, TITLE, ORGANIZATION | c ITEM(S) | d NO. OF UNITS | e SIGNATURE |
|---|---|---|---|---|
| 12/21/07 | Signature of Customs Officer BRUCE MITCHELL 8405 | 2 | 1 | [signature] |
| 12/21/07 | A. Goldstein ICE S/A #4675 | 2 | All | [signature] |
| 12/21/07 | Eric Conenung DEA SA | 2 | All | [signature] |
| | TOT DEA For Prosecution | | | |

| 22. NOTICE OF ABANDONMENT AND ASSENT TO FORFEITURE | I hereby abandon all claim to the above-described articles, line item(s) _____, and waive any further rights or proceedings relative to these articles, other than my right to file a petition for administrative relief. | | |
|---|---|---|---|
| | a. Signature of Importer | b. Date | c. Witness (Customs Officer) | d. Date |

COPIES: OWNER/CARRIER/CONSIGNEE/VIOLATOR; RETAINING/SEIZING OFFICER; FP&F OFFICER; TRANSPORTATION; OTHER TRANSFERS OF CUSTODY

*For Additional Items Use CF 6051A

Customs Form 6051 (120795)

34

**Defendant Exhibit "E" Dkt. 08 CR 242 (SAS) p. 01**