UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

       - v. -                                       :
                                                   08 Cr. 242 (SAS)
MIGUEL HINOJOSA-QUINONES,         :

          Defendant.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S
# MOTION TO SUPPRESS


                                                                MICHAEL J. GARCIA
                                                                *United States Attorney for the*
                                                                *Southern District of New York*
                                                                *Attorney for the United States*
                                                                *of America*


JOHN P. CRONAN
Assistant United States Attorney,
*Of Counsel*



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

July 28, 2008

**By Hand**

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1620
New York, New York 10007

      Re:    United States v. Miguel Hinojosa-Quinones
                 08 Cr. 242 (SAS)

Dear Judge Scheindlin:

      The Government respectfully submits this letter in opposition to the defendant's motion to suppress statements made by the defendant and physical evidence recovered by law enforcement agents, following the defendant's arrest at Newark Liberty International Airport on December 21, 2007.  As discussed below, the Government concedes that a hearing is necessary with respect to whether the defendant knowingly waived his *Miranda* rights and validly consented to a search of his cellular phone and SIM card.[1]  The Court has scheduled an evidentiary hearing in this matter for Friday, August 8, 2008, at 10:00 a.m.

## BACKGROUND

      The defendant is charged in a one-count Indictment with conspiracy to distribute and possess with intent to distribute one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A).

      On or about December 21, 2007, at approximately 4:00 p.m., the defendant and his wife arrived at Newark Liberty International Airport, on a Continental Airlines flight that had originated in Bogota, Colombia.  *See* Exh. B (Complaint) ¶ 4.  During a search of the defendant's

---

      [1]      A Subscriber Identity Module card, known as a SIM card, is a removable card that stores data and information in devices such as cellular telephones.

The Honorable Shira A. Scheindlin
July 28, 2008

luggage upon his arrival, United States Customs and Border Protection ("CBP") officers found inside one of the defendant's bags approximately 1.5 kilograms of a tan-colored substance, which field tested positive for heroin.  *See id.*[2]  The CBP officers then detained the defendant.  *See id.*

Federal agents of the Drug Enforcement Administration ("DEA") and Immigration and Customs Enforcement ("ICE") then interviewed the defendant at another location of the airport.  The interview was conducted in English after the defendant assured the agents that he understood and spoke English.  Prior to starting the interview, the agents advised the defendant of his *Miranda* rights, and the defendant acknowledged his understanding and waiver of those rights, both orally and in writing by signing an advice of rights form (attached as Exhibit C).  During the interview, the defendant stated, *inter alia*, that he had received the bag containing the heroin in Bogota, that he was told that the bag contained heroin, and that he agreed to deliver the bag to an individual in New York City.  The defendant also signed a consent to search form (attached as Exhibit D), authorizing the DEA to search his cellular phone and SIM card.

On or about July 18, 2008, the defendant filed a motion to suppress his oral statements and physical evidence obtained from the search of his cellular phone and SIM card.  In a declaration, affirmed by the defendant under penalty of perjury, the defendant claimed that he "did not understand a great deal of what the agents said" to him.  Declaration of Miguel Hinjoza-Quinones, July 17, 2008, ¶ 4.  He affirmed that his primary language is Spanish and that his understanding of English is poor.  *See id.*  The defendant claimed that he was able to understand the agents, however, when they supposedly threatened to imprison his wife if he failed to talk with them.  *See id.* ¶ 5.  The defendant insisted that agents never read his *Miranda* rights, and that he did not understand the contents of the advice of rights form and consent to search form, which he signed.  *See id.* ¶¶ 14, 15.  The defendant's motion also requests immediate disclosure of any prior bad acts evidence under Federal Rule of Evidence 404(b) and any *Brady* or *Giglio* material.  *See* Notice of Motion ¶¶ 3, 4.

## DISCUSSION

### I.    The Motion To Suppress Should Be Denied Following an Evidentiary Hearing

The Government concedes that, due to the factual allegations made by the defendant in his affidavit, an evidentiary hearing is required.  The Government contends, however, that when the testimony of the agents involved in the defendant's post-arrest interview is heard, the defendant's motion to suppress should be denied in its entirety.  Accordingly, below the Government sets forth the applicable legal standards governing the suppression issues, as well as the expected testimony from the Government's witnesses.

---

[2]     Laboratory tests subsequently confirmed that the substance recovered from the defendant's bag was approximately 1.6 kilograms of heroin.

The Honorable Shira A. Scheindlin
July 28, 2008

### A.    Legal Standards for Knowingly Waiving *Miranda* Warnings

*Miranda* warnings are required prior to police interrogation "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* v. *Arizona*, 384 U.S. 436, 444 (1966). Statements made by a defendant after the administration of *Miranda* warnings are admissible, if the defendant knowingly and voluntarily waives his rights. *See United States* v. *Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (per curiam). "To prove a valid waiver [of *Miranda* warnings], the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States* v. *Jaswal*, 47 F.3d at 542. "Only if the totality of the circumstances 'reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.'" *United States* v. *Male Juvenile*, 121 F.3d 34, 41 (2d Cir. 1997) (quoting authority omitted). "A voluntary relinquishment of a right occurs when the relinquishment is the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States* v. *Male Juvenile*, 121 F.3d at 41 (internal quotations omitted).

A similar "totality of the circumstances" approach is required in the context of an alleged language barrier. *See, e.g.*, *Jaswal*, 47 F.3d at 542; *Campaneria* v. *Reid*, 891 F.2d 1014, 1020 (2d Cir. 1989) ("Even though his proficiency in the English language may have been limited, it did not prevent him from making a knowing and intelligent waiver of his constitutional rights."); *United States* v. *Todisco*, 667 F.2d 255, 260 (2d Cir. 1981) (affirming the district court's rejection of a claim by the defendant that he did not understand English based on the defendant's conduct during the investigation and in-court); *United States* v. *Bing-Gong*, 594 F. Supp. 248, 256-57 (N.D.N.Y. 1984), *aff'd sub nom.*, 788 F.2d 4 (2d Cir. 1986).

### B.    Legal Standards for Voluntarily Consenting to a Search

The Fourth Amendment "generally requires police to secure a warrant before conducting a search." *Maryland* v. *Dyson*, 527 U.S. 465, 466 (1999) (per curiam). "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 219 (1973). "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." *Id.* at 22. "[T]he ultimate question is whether 'the officer had a reasonable basis for believing that there had been consent to search.' " *United States* v. *Garcia*, 56 F.3d 418, 423 (2d Cir. 1995) (citing authority omitted). The United States Supreme Court has emphasized "that the issue of reasonableness is to be measured by an objective standard." *Id.* In making that determination, courts ask "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida* v. *Jimeno*, 500 U.S. 248, 251 (1991) (quoting authority omitted).

The Honorable Shira A. Scheindlin
July 28, 2008

The Second Circuit "has steadfastly avoided the adoption of any criterion that, in and of itself, would mandate a finding of involuntariness and thereby undermine a thorough analysis of all the relevant circumstances." *United States* v. *Bye*, 919 F.2d 6, 9 (2d Cir. 1990) (citing cases). When assessing the voluntariness of consent, courts should consider such factors as the individual's age, intelligence and educational background, length and nature of questioning, and whether law enforcement officers engaged in coercion. *United States* v. *Jones*, 154 F. Supp. 2d at 621 (citing *Schneckloth* v. *Bustamonte*, 412 U.S. at 226–27); *United States* v. *Lavan*, 10 F. Supp. 2d 377, 384 (S.D.N.Y. 1998) (citations omitted); *see also United States* v. *Yu-Leung*, 910 F.2d 33, 41 (2d Cir. 1990); *United States* v. *Arango-Correa*, 851 F.2d 54, 57 (2d Cir. 1988).

Valid consent "need not be expressed through any particular phrase, and it 'can be found from an individual's words, acts or conduct.'" *United States* v. *Camilo*, 287 F. Supp. 2d 446, 451 (S.D.N.Y. 2003) (quoting *Krause* v. *Penny*, 837 F.2d 595, 597 (2d Cir. 1988)); *see, e.g.*, *United States* v. *Jones*, 154 F. Supp. 2d 617 (S.D.N.Y. 2001). The fact that a defendant is under arrest when he gives consent to search does not render such consent involuntary. *See United States* v. *Watson*, 423 U.S. 411, 424 (1976) ("[T]he fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search."); *United States* v. *Crespo*, 834 F.2d 267, 271 (2d Cir. 1987); *United States* v. *Valencia*, 645 F.2d 1158, 1165 (2d Cir. 1980).

C. The Expected Evidence and Testimony at the August 8, 2008 Hearing

At the hearing, the Government expects to call as witnesses at least two of the agents who administered the *Miranda* warnings to the defendant, and obtained his oral and written waiver of his *Miranda* rights and consent to search his cellular phone. These witnesses are expected to testify that the defendant spoke English fluently, that he agreed to have the interview conducted in English, that he was advised of his *Miranda* rights and waived those rights, that he never expressed any confusion as to what was being said to him, and that he never asked to stop the interview to speak with an attorney.

The Government expects that the evidence will show that, prior to starting the interviewing of the defendant, the agents advised the defendant of his *Miranda* rights and the defendant signed an advice of rights form (attached as Exhibit C). On this form, the defendant initialed his understanding of the following: "You have the right to remain silent"; "Anything you say can be used against you in court"; "You have the right to talk to a lawyer for advice before we ask you any questions"; "You have the right to have a lawyer with you during the questioning"; and "If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish." *See* Exh. C. The defendant also signed this advice of rights form, acknowledging that he has been advised of these rights, that he understands his rights, and that he was "willing to freely and voluntarily answer questions without a lawyer present." *Id.* The defendant signed this form in the presence of several agents, and the form also was signed by Special Agent John Gillespie of ICE and Special Agent Eric Conaway of the DEA.

The Honorable Shira A. Scheindlin
July 28, 2008

  The evidence will show that, after waiving his *Miranda* rights and agreeing to speak with the agents, the defendant proceeded to make extensive incriminating statements. The defendant stated that he received a bag containing heroin from an individual in Bogota, Colombia. The defendant acknowledged that he knew that heroin was in the bag, that he was transporting the bag to the United States, and that he was supposed to receive approximately $16,000 for transporting the heroin. The defendant stated that the head of this drug trafficking organization is listed in his cellular phone. The defendant also stated that he was instructed that, upon his arrival in New York, he would be contacted by an unknown individual who would receive the heroin. The defendant explained that he was supposed to maintain contact with members of the drug trafficking organization during his stay in New York city because he was responsible for overseeing approximately 6 mules, who would be flying into various airports in New Jersey and New York with kilogram quantities of heroin. The defendant further admitted that, in July 2006, he swallowed approximately 61 pellets of heroin, totaling approximately 630 grams, and traveled from Bogota, Colombia, to Miami.

  The Government also expects that the evidence will show that the defendant also consented, both orally and in writing, to a search of his cellular phone and SIM card. The defendant signed a Consent to Search form (attached as Exhibit D), in which the defendant acknowledged that he could refuse consent to the search, and that anything discovered during the search could be used against him in court proceedings. *See* Exh. D. The defendant authorized the DEA "to conduct a complete search of [his] cell phone and SIM card located at Newark Liberty International Airport and to take therefrom any letters, papers, materials, information, or other property which they may desire." *Id.* The defendant acknowledged that he gave this authorization "voluntarily and without threats, promises, pressure, or coercion of any kind." *Id.* The defendant's consent was witnessed by DEA Special Agents David Lanzoni and Eric Conaway.

  The Government expects this testimony and evidence to establish that the defendant knowingly and voluntarily waived his *Miranda* rights, and validly consented to a search of his cellular phone and SIM card.[3]

---

[3] The Government does not know whether the defendant is going to testify at the upcoming hearing. If he does not testify and chooses to rely on his affidavit, the Government requests the Court to consider this when the Court evaluates the conflicting assertions. *See United States* v. *Al Marri*, 230 F. Supp. 2d 535, 539 (S.D.N.Y. 2002) (valuing live testimony "over the contents of a defendant's affidavit"); *United States* v. *Julian*, 2000 WL 1206745, *5 n.4 (S.D.N.Y. 2000) ("[B]ecause defendant did not testify at the hearing and was not subject to cross examination . . . the Court gives little weight to defendant's assertion").

The Honorable Shira A. Scheindlin
July 28, 2008

## II.     The Defendant's Request for Notice of Rule 404(b) Evidence Is Premature

The defendant also requests that the Court order the Government to immediately provide the defendant with any information about prior bad acts that it would seek to introduce under Federal Rule of Evidence 404(b). Defendant's Memorandum of Law at 6–8. Pursuant to Rule 404(b), the Government must "provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such [prior bad acts] evidence it intends to introduce at trial." Fed. R. Evid. 404(b).

The defendant argues that courts have required disclosure of Rule 404(b) evidence "sufficiently in advance of trial to allow the defendant to prepare for trial in factually complex indictments." Defendant's Memorandum of Law at 6. In support, the defendant cites four cases with such factual complexities, where disclosure was required anywhere between 14 days and 30 days before trial. *See id.*

This is not a factually complex indictment; the defendant acted as a drug courier who attempted to smuggle heroin on behalf a Colombian drug trafficking organization, and was caught with the narcotics after disembarking a flight at Newark Liberty International Airport.[4] Nor has the Court yet set a trial date. Ordering immediate disclosure of Rule 404(b) evidence is premature at this stage.

---

[4]     The cases cited by the defendant where early Rule 404(b) disclosure was ordered clearly involved vastly more complicated fact patterns than the instant case. *See* Defendant's Memorandum of Law at 6. *United States* v. *Heatley*, 994 F. Supp. 483 (S.D.N.Y. 1998), where the Government was ordered to provide Rule 404(b) notice three weeks before trial, was a multiple-defendant murder and racketeering prosecution. In *United States* v. *Henderson*, No. 96-CR-221 (RSP), 1997 WL 567935 (N.D.N.Y. Sept. 5, 1997), which involved a conspiracy to distribute cocaine and crack cocaine over approximately a 3 year period, the Government was directed to provide Rule 404(b) notice "reasonably in advance of trial unless it can show good cause for the delay." *Id.* at *2. *United States* v. *Wilson*, No. 95 Cr. 688 (LMM), 1997 WL 10035 (S.D.N.Y. Jan. 10, 1997), where the Government was ordered to provide Rule 404(b) notice 30 days before trial, involved four defendants, who were charged with participating in racketeering conspiracy with nineteen predicate acts, substantive racketeering, and receiving illegal payments while serving as an officer or representative of a labor union. Finally, in *United States* v. *Padilla*, S1 94 Cr. 313 (CSH), 1994 WL 681812 (S.D.N.Y. Dec. 5, 1997), the Court ordered disclosure of Rule 404(b) notice 14 days before trial "[g]iven the magnitude of this case." *Id.* at *13. The indictment in *Padilla* had 78 counts, charging the defendants with substantive and conspiracy counts under RICA, racketeering, murder and other violent crimes in aid of the racketeering activity, narcotics distribution conspiracy, and use of a firearm in relation to a crime of violence.

The Honorable Shira A. Scheindlin
July 28, 2008

### III. The Government Understands and Will Comply With Its Obligations Under *Brady* and *Giglio*

The defendant also seeks immediate disclosure of any exculpatory *Brady* material and information, and *Giglio* material relating to the Government's witnesses. *See* Notice of Motion ¶ 4.

The Government has a duty to disclose evidence favorable to the accused when such evidence is material to guilt, *Brady* v. *Maryland*, 373 U.S. 83, 87 (1963), and this duty covers not only exculpatory evidence but also impeachment information for Government witnesses, *Giglio* v. *United States*, 405 U.S. 150, 154 (1972). This disclosure obligation extends only to that material that, "'if suppressed, would deprive the defendant of a fair trial,'" *United States* v. *Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (quoting *United States* v. *Bagley*, 473 U.S. 667, 675 (1985)), and that such a deprivation occurs only where there is a "reasonable probability" that the suppression "affected the outcome of the case," *United States* v. *Coppa*, 267 F.3d at 135 (citing *United States* v. *Bagley*, 473 U.S. at 682), or would have "'put the whole case in such a different light as to undermine confidence in the verdict,'" *Coppa*, 267 F.3d at 135 (quoting *Kyles* v. *Whitney*, 514 U.S. 419, 435 (1995)).

*Giglio* material need only be produced for Government witnesses. *See United States* v. *Green*, 178 F.3d 1099, 1109 (10th Cir. 1999) (holding that Government was under no obligation to produce *Giglio* material relating to informant because informant did not testify); *United States* v. *Mullins*, 22 F.3d .1365, 1372 (6th Cir. 1994) (same). *Giglio* material must be disclosed "in time for its effective use at trial." *Coppa*, 267 F.3d at 135. However, *Brady* and *Giglio* give rise to no pretrial remedies because there is no general right to pretrial discovery of impeachment material; "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *United States* v. *Nixon*, 418 U.S. 683, 701 (1974); *see United States* v. *Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980) (*Giglio* material "ripen[s]" into evidentiary impeachment material only when witness testifies).

The Government's *Giglio* obligation does not require the prosecutor to simply "deliver his entire file to defense counsel." *United States* v. *Bagley*, 473 U.S. at 675; *see also United States* v. *Gaggi*, 811 F.2d 47, 59 (2d Cir. 1987). Rather, it is only material impeachment evidence that must be disclosed. *See Bagley*, 473 U.S. at 675–76; *United States v. Gaggi*, 811 F.2d at 59; *United States* v. *Leung*, 40 F.3d 577, 582 (2d Cir. 1994); *United States* v. *Kiszewski*, 877 F.2d 210, 216 (2d Cir. 1989). In order to meet the threshold of materiality, there must be a reasonable probability that, if disclosed, the impeachment evidence would change the outcome of the trial. *See Bagley*, 473 U.S. at 675–78; *see also Kyles* v. *Whitley*, 514 U.S. at 433–36; *United States* v. *Agurs*, 427 U.S. 97, 104 (1976); *United States* v. *Kiszewski*, 877 F.2d at 216. This standard requires consideration of whether, in the absence of the impeachment evidence, the defendant would "receive[] a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 534.

The Honorable Shira A. Scheindlin
July 28, 2008

      The Government is fully aware of its obligations under *Brady* and *Giglio*. At present, the Government is unaware of any exculpatory evidence that must be disclosed under *Brady*. To the extent there is any impeachment information for the Government's witnesses required to be disclosed under *Giglio*, the Government will produce any such material to the defense at the appropriate time prior to that witness's testimony. At this stage, however, there is nothing for the Court to rule on with respect to impeachment material that the Government has not provided to the defense.

## CONCLUSION

      Based on the foregoing authority, the Government submits that after hearing the live testimony of the Government witnesses, as well as the documentary evidence, the defendant's motion should be denied in its entirety.

                                                Respectfully submitted,

                                                MICHAEL J. GARCIA
                                                United States Attorney

                              By:    /s/ John P. Cronan
                                      John P. Cronan
                                      Assistant United States Attorney
                                      Tel.: (212) 637-2779
                                      Fax: (212) 637-2390

Enclosures
      Exhibit A: Indictment
      Exhibit B: Complaint
      Exhibit C: Advice of Rights form
      Exhibit D: Consent to Search form

cc:    Robert Krakow, Esq.
       *By facsimile and First Class mail*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA  :  **INDICTMENT**

- v. -  :  08 Cr.

MIGUEL ENGEL HINOJOZA-QUINONES,  :

           Defendant.  :

- - - - - - - - - - - - - - - - -x

*08 CRIM 242*

*JUDGE SCHEINDLIN*

### COUNT ONE

The Grand Jury charges:

1. From on or about December 20, 2007, through on or about December 21, 2007, in the Southern District of New York and elsewhere, MIGUEL ENGEL HINOJOZA-QUINONES, the defendant, and others known and unknown, unlawfully, intentionally, and knowingly did combine, conspire, confederate and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that MIGUEL ENGEL HINOJOZA-QUINONES, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, to wit, one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Codes, Sections 812, 841(a)(1), and 841(b)(1)(A).

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAR 10 2008

Overt Act

3.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

   a.   On or about December 21, 2007, MIGUEL ENGEL HINOJOZA-QUINONES, the defendant, possessed a bag containing heroin that he was supposed to deliver to another individual in New York.

(Title 21, United States Code, Section 846.)

FORFEITURE ALLEGATION

4.   As a result of committing the controlled substance offense alleged in Count One of this Indictment, MIGUEL ENGEL HINOJOZA-QUINONES, the defendant, shall forfeit to the United States pursuant to 21 U.S.C. § 853, any and all property constituting or derived from any proceeds the said defendant obtained directly or indirectly as a result of the said violation and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in Count One of this Indictment.

5.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

    (Title 21, United States Code,
    Sections 841, 846, and 853.)

_____  
FOREPERSON

_____  
MICHAEL J. GARCIA  
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

- v. -

**MIGUEL ENGEL HINOJOZA-QUINONES,**

Defendant.

### INDICTMENT

08 Cr.

(21 U.S.C. § 846)

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

*[signature]*
Foreperson.

*[handwritten: 3/14 - Filed Indictment Case assigned to Judge Scheindlin. Pitman, U.S.M.J.]*

07 MAG 2175

ORIGINAL

Approved: *Jenna M. Dabbs*
          JENNA M. DABBS
          MARSHALL CAMP
          Assistant United States Attorney

Before:  HONORABLE MICHAEL H. DOLINGER
        United States Magistrate Judge
        Southern District of New York

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA   :   **COMPLAINT**

       - v. -              :   Violation of
                                 21 U.S.C. § 846

MIGUEL ENGEL HINOJOSA-QUINONES,  :   COUNTY OF OFFENSE:
                                 NEW YORK COUNTY, et al.
          Defendant.  :

- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

      Michael Cogan, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA") and charges as follows:

### COUNT ONE

      1.  On or about December 21, 2007, in the Southern District of New York and elsewhere, MIGUEL ENGEL HINOJOSA-QUINONES, the defendant, and others known and unknown, unlawfully, intentionally and knowingly did combine, conspire, confederate and agree together and with each other to violate the narcotics laws of the United States.

      2.  It was a part and an object of the conspiracy that MIGUEL ENGEL HINOJOSA-QUINONES, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, to wit, one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(A).

      (Title 21, United States Code, Section 846.)

      The bases for my knowledge and for the foregoing charge are, in part, as follows:

3.    I am a Special Agent with the Drug Enforcement Administration ("DEA"), and I have been personally involved in the investigation of this matter. I have been a Special Agent with the DEA for approximately five years and my duties include investigating violations of federal narcotics laws. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4.    On or about December 21, 2007, at approximately 4:00 p.m., MIGUEL ENGEL HINOJOSA-QUINONES, the defendant, arrived at Newark International Airport ("Newark Airport") in Newark, New Jersey, on a Continental Airlines flight that had originated in Bogota, Colombia. Upon arrival at Newark Airport, HINOJOSA-QUINONES's luggage was searched by officers of the United States Customs and Border Protection agency ("CBP"). During that search, a black bag that HINOJOSA-QUINONES was traveling with was found to contain approximately 1.5 kilograms of a tan-colored, powdery substance, packaged in plastic within the lining of the bag, and, based on my training and experience, consistent in appearance with heroin. The substance was subsequently field tested and found to contain heroin. CBP officers detained HINOJOSA-QUINONES.

5.    Subsequently, I and other law enforcement officers interviewed MIGUEL ENGEL HINOJOSA-QUINONES, the defendant. Prior to the start of questioning, HINOJOSA-QUINONES was advised of his Miranda rights, acknowledged that he understood his rights, and agreed to speak with law enforcement officers. During the interview, HINOJOSA-QUINONES admitted, among other things, in substance and in part, that he had received the bag containing the heroin in Bogota, Colombia, and was told that the bag contained approximately 1.5 kilograms of heroin; he had agreed to deliver the heroin to the United States; and that upon arrival at Newark Airport, HINOJOSA-QUINONES planned to travel with the bag containing the heroin through New York, New York, to a destination in Brooklyn, New York.

6.    Based on my discussions with another law enforcement officer, who consulted with officials of the Federal Aviation Administration, I have learned that the Continental

Airlines flight on which MIGUEL ENGEL HINOJOSA-QUINONES, the defendant, arrived on or about December 21, 2007, approached Newark Airport on a flight path that took the aircraft directly over Putnam County, which is located in the Southern District of New York.

    WHEREFORE, deponent respectfully requests that MIGUEL ENGEL HINOJOSA-QUINONES, the defendant, be imprisoned or bailed as the case may be.

_____
MICHAEL COGAN
Special Agent
Drug Enforcement Administration

Sworn to before me this
24th day of December, 2007

_____
HONORABLE MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

# N-3

## ADVICE OF RIGHTS

Place: Newark NJ Airport
Date: 12/21/07
Time: 6:00

## YOUR RIGHTS

### BEFORE WE ASK YOU ANY QUESTIONS, DO YOU UNDERSTAND:

MH  You have the right to remain silent.

MH  Anything you say can be used against you in court.

MH  You have the right to talk to a lawyer for advice before we ask you any questions.

MH  You have the right to have a lawyer with you during the questioning.

MH  If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

Do you understand your rights?

Are you willing to answer some questions?

## WAIVER OF RIGHTS

[ ✓ ] I have read or [ ✓ ] someone has read to me this advice of rights and I understand what my rights are. At this time, I am willing to freely and voluntarily answer questions without a lawyer present.

Signed x _[signature]_

Witness: S/A John Gillespie  [signature]  6:00pm  12/21/07
Witness: SA Eric Conaway  [signature]  6:00pm  12/21/07
Time: _____

FORM DEA-13 (4-06)

DEA N-2




U.S. DEPARTMENT OF HOMELAND SECURITY
IMMIGRATION & CUSTOMS ENFORCEMENT

### CONSENT TO SEARCH

I have been informed of my constitutional right not to have a search made of my ___CELL PHONE___ without a search warrant.
 and one additional SIM CARD
I also have been informed of my right to refuse to consent to the ___CELL PHONE___ being searched without a search warrant.

I have been warned that anything discovered during such a search may be used against me in court or other proceedings.

I hereby authorize Special Agent(s) of U.S. ~~Immigration and Customs~~ D.E.A. Enforcement to conduct a complete search of ___CELL PHONE & SIM CARD___ located at ___NEWARK LIBERTY INTERNATIONAL AIRPORT___ and to take therefrom any letters, papers, materials, information, or other property which they may desire. I have given this authorization to the above Special Agent(s) voluntarily and without threats, promises, pressure, or coercion of any kind.

PRINT NAME: Miguel Angel Hinojosa
SIGNATURE: [signature]   DATE: 12/21/07

Initial if appropriate:
He/She has also read the above.   ✓
Acknowledged that he/she understood.   ✓
He/She refused to sign.   ___

X [signature] 12/21/07          X [signature]
DHS/ICE Agent's Signature        DHS/ICE Agent's Signature
DEA LANZON                       DEA Conaway